Guarantee Trust and Safe Deposit Co. v. Jenkins.

GUARANTEE TRUST AND SAFE DEPOSIT COMPANY

*v.*

RICHARD S. JENKINS et al.

1. The master struck off the premises to the solicitor of complainant, who signed the conditions as "attorney," and afterwards directed the master to report the sale in the name of another.—*Held*, that the defendant could not object to this in the absence of fraud.

2. At the sale, a certificate of taxes was produced by the solicitor of complainant, showing over $2,100 of assessments; the fact was announced at the same time; it is insisted that there were less than $1,000 that could be enforced, the rest being outlawed.—*Held*, that this is not ground for setting aside the sale, it not appearing that any one was misled.—*Held*, also, that the presumption is that the paper was produced and statement made for a proper purpose.

3. It is not necessary for an officer, in making sale of lands under the order of a court, to attempt to describe the improvements thereon.

4. The defendant had taken a title to the mortgaged premises in four different parcels, all contiguous, and all occupied and used by him as a city home or residence; the premises were sold as one parcel; the decree directed the sale of all, and so did the writ, without more; the defendant had full knowledge of the facts, and asked for and had three adjournments, without requesting that the lands be sold in parcels.—*Held*, that such sale is valid.

5. The several lots and improvements cost the defendant over $18,000; they sold for $8,500; several witnesses have testified, and their judgment is that the property is worth $9,500 at a forced sale for cash; the taxes and costs, which are admitted to be liens, are over $1,000.—*Held*, that the statute which requires the court to be satisfied that the highest and best price that the property would bring in cash, has been complied with.

Bill to foreclose.   Petition to set aside master's sale.

*Messrs. Bergen & Bergen,* for petitioner.

*Mr. S. P. Jones, contra.*

BIRD, V. C.

A bill was filed to foreclose a mortgage given by the defendant Richard S. Jenkins.   A final decree was taken and an exe-

cution issued, directed to a master, who advertised the property advertised therein for sale. After three adjournments, which were made at the request of Mr. Jenkins, the property was sold for $8,500. It was struck off to S. P. Jones, the solicitor of the complainant, who signed the conditions in his own name, adding "attorney." He afterwards directed the sheriff to report the sale as made to one Cohen. The confirmation of this sale is objected to—

*First.* Because the property was struck off to the solicitor of the complainant, and the report of sale made to Cohen, who did not bid. I think there is nothing substantial in this objection, standing alone and unattended by any fraud. It does not occur to my mind that any of the circumstances shows a combination which could in anywise injure the defendant.

*Second.* Because it was given out at the sale that the property would be sold subject to taxes, besides interest and costs. The amount of taxes named as assessed against the property was $2,127.10, made up of the assessments for all the period from 1875 to 1884, inclusive. I cannot understand that the defendant suffered from what was said or done in this particular. The conduct of the master and of the complainants' solicitor is susceptible of two constructions, possibly—a good and a bad one. They may have designed to impose upon bidders the impression that there were very large assessments against the property, and thereby hinder fair competition. If this were established by the testimony I would be obliged to advise that the sale be not confirmed. But they may have intended to present all the facts to bidders in order to prevent any imposition and to secure a fair sale, which view I am bound to accept unless the testimony is quite conclusive to the contrary.

The presumption of law is that the conduct of the party complained of is honest and right until the contrary appears. The complainants' solicitor procured from the receiver of taxes a certificate of the taxes assessed against the defendant, and produced it at the sale, and from such certificate made the announcement of the assessments against the defendant on this property. This certificate shows the assessment for each year. Was it for an

Guarantee Trust and Safe Deposit Co. *v.* Jenkins.

honest or a dishonest purpose ?    It seems to me that they would
have concealed the truth and would not have come with the
record in their hands had they intended or desired to obtain any
advantage over the defendant.   It is said an advantage was
obtained because the taxes from 1875 to 1879, inclusive, were
no longer liens because five years had elapsed, the period of
limitation fixed by the charter within which the taxes could be
enforced, and that the announcement was calculated to deceive
or mislead.    As I have intimated, had the announcement not
been accompanied by the production of the certificate, there would
have been more force in this objection to confirmation.    But it
seems to me that an honest purpose would prompt a complainant
to do what was done in this case.   He stated the whole amount
of the assessments, and produced a certificate of the record there-
of which could be seen and read by every one interested.    It
does seem to me that this is consistent with a fair endeavor to
procure a sale, which the court would confirm, for the highest
and best price, and especially so when it is considered that quite
a large balance remains due upon the mortgage, and that the de-
fendant has hitherto been unable to discharge it.    It was fair to
bidders, for they could judge for themselves what proportion or
what amount of the taxes upon the certificate had been dis-
charged by force of the limitation contained in the charter.

Besides, it does not appear that any person was in any wise
misled, or that any one hesitated or refused to bid because of any-
thing that was said or done respecting the taxes.    This consid-
eration, I think, is very important, where an effort is made to
have the court reject a judicial sale upon the ground of alleged
fraud.    I do not say what would be the duty of the court in case
the fraud should be established, and it still appears to be doubt-
ful whether the complaining party was injured or not, but where
the presumption of honesty has not been overthrown, I think
the court is not only justified but obliged to take into account
the fact that fair competition to the fullest extent was not inter-
fered with.

I am referred to *Bentley* v. *Heintze, 6 Stew. Eq. 405,* as an au-
thority sustaining the objections made to confirmation on the

ground now under consideration, but in that case fraud was not only proved beyond question, but a party interested, and who intended to bid, was not only deterred from bidding but from attending the sale. *Hackensack Water Company* v. *De Kay, 9 Stew. Eq. 548,* was also pressed upon my attention. If what was said or done in reference to the assessments in the case before me be as alleged, as I think is proved, then the case to which I am referred sustains the views which I have expressed rather than otherwise, for, in the language of that case, the announcement was "equivalent to a notice to purchasers of what claims might be made against the title he conveys, and amounts to nothing more." And so, likewise, it is insisted that the case of *Kirkpatrick* v. *Corning, 11 Stew. Eq. 234, 249,* sustains the resistance now made to this confirmation. In that case the charge was that fraud was not only planned but perpetrated, and all that remained was for an officer of the court and his coadjutor to reap the profits of it. This the court determined to inquire into. There the fraud was perfectly manifest if the allegations made should be established.

*Third.* Because the advertisement of the sale described the premises to be sold as lots, without mentioning the improvements upon them. I think this is not a good objection to confirmation. If the price at which the lots were sold were grossly inadequate, then the want of a full description of the premises, besides courses and distances, might properly be an element of consideration; but, until that fact is established, it seems to me it would be a very dangerous doctrine to hold that a judicial sale is not lawful because the officer failed to describe all the improvements upon the land; for if it be a question of description, then the question would inevitably follow, How describe and to what extent characterize this or that structure? and the courts would be involved more extensively in determining whether the effort of their officers at describing were successful or not, than, without such effort, in determining whether a sale was fair or not, by leaving all persons interested, including bidders, to judge of those things for themselves. It is conceded that the officer in this case has faithfully pursued the description of the property contained in the writ.

In this I think he was justified by what I understand to be the invariable practice in such cases. But, in my judgment, on this point the defendant ought not to be heard at this stage of the cause. The decree was entered thus describing the property and directing its sale. The execution commanded the sheriff to sell the property by such description; the officer advertised it as he was bidden to do, adhering to the language of the writ; for more than two months public notice was given in five or more places, and for four weeks in two of the newspapers of the county; the defendant himself applied for and obtained three adjournments of the sale thus advertised, without uttering a word of complaint or attempting to show to the court that he would suffer in his estate by a sale under such notices. He lived in the house that was about to be sold with the lots, and is chargeable with the fullest knowledge of all that had been done in the orderly and regular progress of the cause, and it seems to me he is now beyond all question estopped from lifting up his voice against what has been done, when he neglected so many earlier opportunities to have the error (if error it be) corrected without prejudice or hardship to others.

*Fourth.* Because the premises were advertised to be sold in lots and were really sold in the lump as one parcel. The master did not give notice that he would sell the premises in parcels. His language is "all the following-described town lots, tracts and pieces of land situate" &c., then describing them by metes and bounds. The dwelling-house was upon one lot. The defendant had purchased three other lots adjoining, one on each side, and one in the rear. These he had improved and adorned as part and parcel of his homestead, and in all respects treated the four as one. And that they should be offered as one and not in four different parcels, in the belief that there might be other gentlemen of similar tastes, it seems to me will not surprise any person disinterested. It is said that if *Johnson* v. *Garrett, 1 C. E. Gr. 31,* be followed, this sale cannot stand. Cases are only followed when they are very similar, or the analogy is so strong as to draw the mind inevitably after them. In that case the auditors were required to sell only so much of the debtor's lands as would be

necessary to discharge the obligation, instead of doing which they sold the whole. Such a sale the courts could not uphold. In principle, *Vanduyne* v. *Vanduyne, 1 C. E. Gr. 93,* is not unlike the preceding one. In that case the court simply decided that it is the duty of the officer to sell only so much land as is necessary to raise and satisfy the judgment and costs. There, as in this case, there were different parcels of land with this difference, that one was separated entirely from the others, and they were sold together, and the defendant sought to set the sale aside because of that fact, but in that he did not succeed. The importance of that case in the present judgment will more fully appear when we consider the next point raised. The case of *Corles* v. *Lashley, 2 Mc-Cart. 116,* is also relied on. In that case there were different tracts of land, and the court said the general rule is that if the land is plainly divisible it should be sold in different parcels, so as to secure the highest price. But the facts of that case are so radically different as to remove it from all influence in the consideration of this, except so far as the general principle is applicable, which none pretends, for a moment to question.

*Fifth.* Because the price realized was so grossly inadequate as to justify the court in refusing to confirm the sale. Under this branch of the case I must be guided by legislative enactment. The provision is—

"That no sale of mortgaged premises shall be confirmed by the court or further proceedings had until the court or such judge is satisfied by evidence that the property has been sold at the highest and best price the same would then bring in cash." *P. L. of 1880 p. 255.*

My judgment, therefore, must be controlled by the evidence, which settles one way or the other the inquiry, Have the premises in question been sold for the highest and best price that the same would *then* bring in cash.? Upon this point affidavits have been submitted. Mr. Harned, on behalf of the defendants, bid $8,000, and intimated he was instructed not to go beyond that, which, although not conclusive, is of some value. The defendant Mr. Jenkins says that he paid $8,400 for the lot on which the building stands, in 1868 ; that he improved the lot at

a cost of $544, and the house at a cost of $6,000. He now estimates the house and lot upon which it stands, independent of the three lots bought afterwards, at $12,000. For one of the adjoining lots he paid $1,600, and now values it at $2,000. For the other lot, fronting on the same street, he paid $2,400, and now values it at $3,000. The remaining lot cost him $1,050, and he now values it at $1,500.

On behalf of the complainant affidavits were also presented. Ex-Sheriff Calhoun, who has had very large opportunities to improve and ripen his judgment, says he would consider $10,000 an outside price at sheriff's sale. Joseph Butcher, a contractor and builder, and the owner of real estate, says that $10,000 would be a fair price for the property at private sale, but refused to intimate its value at a forced sale, for cash. John C. Rogers, also a building contractor, says that $10,500 would be a fair price at private sale, but refuses to give an estimate of what it would probably bring at a forced cash sale. Lewis B. Humphreys values it at $12,000 at private sale, and $10,000 as a fair price at a forced sale. D. Somers Risly, an owner and dealer in real estate, thinks it worth $10,000 at private sale and $8,500 at a sheriff's sale. Jonathan Burr thinks $9,000 would be a fair price at a sheriff's sale. Simon T. Reeigels says $10,000 would be a fair price at sheriff's sale. Samuel Rudderow speaks to the same effect, while Mr. Reed says $9,500. These witnesses are not only men of respectability but of large experience, and their testimony aids the court greatly. Taking their testimony as a whole, the highest and best price which could be obtained for this property at a forced sale, for cash, is about $9,500.

If to this $9,500 be added the amount which is admitted to be a prior lien for taxes and interest and costs thereon, in all over $1,300—and it is plain that the premises were sold for the highest and best price which they would then bring—the requirements of the statute, to all intents, have been complied with, yet the defendant, with great earnestness, insists that the premises will sell for more at a resale. But no one has offered more, and no pretence is made that any one can be produced who will offer more. This is important. *Vanduyne v. Vanduyne, 1 C. E. Gr. 93.*

Nor is there any assurance that the price already bid and the costs to be incurred and interest to accrue will be secured to the complainant. I cannot disregard this consideration, since, in refusing to confirm a sale with security, at which the complainant has realized a large sum, though not all its claim, the court would take great risks. Clearly, therefore, the complainant might suffer by a resale, in which case the defendant would also be the loser. Hence, the proceeding having been regular,. the sale fair and free from fraud, as I have found, every presumption is in favor of the application to confirm the sale on the ground that the statute has been complied with. This presumption has not been overcome or shaken in the least.

I will advise that the motion not to confirm the report of sale be denied, with costs, and that the report be in all things confirmed.